**Thomas Richard BROWN,**
**Plaintiff–Appellee,**

v.

**Frank D'AMICO, Defendant–Appellant.**

**No. 1483, Docket 93–9243.**

United States Court of Appeals,
Second Circuit.

Argued May 10, 1994.

Decided Sept. 12, 1994.

Henri Alexandre, Asst. Atty. Gen., Hartford, CT (Richard Blumenthal, Atty. Gen., Jane Rosenberg, Asst. Atty. Gen., on the brief), for defendant-appellant.

Donn A. Swift, New Haven, CT (Hugh F. Keefe, Mary Beattie Schairer, Christopher M. Licari, Lynch, Traub, Keefe & Errant, on the brief), for plaintiff-appellee.

Before: NEWMAN, Chief Judge, JACOBS and LEVAL, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This interlocutory appeal concerns a state investigator's claim to qualified immunity in connection with an arrest warrant obtained from a judge after a finding of probable cause by a Connecticut "investigatory grand jury." The specific issue is whether the investigator is protected by qualified immunity from a civil rights action for false arrest and malicious prosecution because his affidavit in support of the warrant omitted information alleged to undermine probable cause, notwithstanding the fact that the omitted information had been considered by the grand jury. The issue arises on an appeal by Frank D'Amico from a ruling of the District Court for the District of Connecticut (Alan H. Nevas, Judge) denying in part D'Amico's motion seeking summary judgment on the ground of qualified immunity. We believe that D'Amico is entitled to qualified immunity and accordingly reverse.

## Background

*The "investigatory grand jury" in Connecticut.* Connecticut statutes authorize two types of grand juries, an indicting grand jury, composed of eighteen electors, *see* Conn.Gen.Stat. § 54–45(a) (1993), and an investigatory grand jury, composed of either one or three judges, *see id.* § 54–47(b)(3) (1993). This appeal concerns an investigatory grand jury, an instrumentality "known to the common law," *State v. Menillo,* 159 Conn. 264, 273, 268 A.2d 667, 671 (1970), but now entirely a "creature of statute," *Connelly v. Doe,* 213 Conn. 66, 70, 566 A.2d 426, 429 (1989). Typically consisting of only one judge, the investigatory grand jury has been referred to, at least before women were ap-pointed to the Connecticut Superior Court, as a "one man grand jury." *See State v. Moynahan,* 164 Conn. 560, 563 n. 1, 325 A.2d 199, 204 n. 1, *cert. denied,* 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973).

Unlike an indicting grand jury, which has the power both to investigate and to accuse by a formal charging "bill," Conn.Gen.Stat. § 54–45(a), (b), an investigatory grand jury is authorized only to investigate. At the completion of its task, it files with the Superior Court a "finding," which "shall state whether or not there is probable cause to believe that a crime or crimes have been committed." *Id.* § 54–47g(a). Thereafter, the initiation of criminal charges rests with the prosecuting authorities.

*The Waterbury investigation.* In 1985, a panel of state judges authorized an investigation into possible corruption in Waterbury, Connecticut. *See* Conn.Gen.Stat. § 54–47b(4) (1993). Pursuant to the panel's authorization, the chief court administrator appointed Connecticut Superior Court Judge Barry Schaller to serve as a one-person investigatory grand jury. The role of the investigatory grand jury was to find whether there was probable cause to believe that a crime had been committed. *Id.* § 54–47g(a). Appellant Frank D'Amico, an investigator in the State's division of criminal justice, was assigned to assist in the investigation. Appellee Thomas R. Brown, a Waterbury police officer, was one of the subjects of the grand jury's investigation. On July 1987, the investigatory grand jury filed a report of its findings. Though this document has been sealed, all available evidence indicates (and D'Amico attests) that the investigatory grand jury found probable cause to believe that Brown committed perjury and fabricated evidence during the grand jury proceedings.

*The charges against Brown.* D'Amico then applied to Connecticut Superior Court Judge Paul Foti for a warrant to arrest Brown for perjury and fabrication of evidence stemming from Brown's testimony before the grand jury. In support of this application, D'Amico filed an affidavit setting forth the basis for his claim that there was probable cause. In the affidavit, D'Amico

said that his statements were based on the testimony heard by, and the exhibits entered before, the investigatory grand jury. Assistant State's Attorney David Shepack had approved the warrant application and accompanying affidavit. Judge Foti found probable cause and issued the warrant, which was duly executed. The charges against Brown were dismissed in January 1989.

*The civil rights suit.* Thereafter, Brown filed the pending civil rights complaint under 42 U.S.C. § 1983. He contends that D'Amico omitted crucial exonerating information from his warrant affidavit and is therefore liable for false arrest and malicious prosecution. According to Brown, D'Amico excluded from his affidavit the testimony of certain individuals who had appeared before the grand jury. Because the testimony received by the grand jury remains sealed (with the exception of Brown's testimony), Brown offered affidavits from these persons summarizing their testimony before the grand jury. Brown alleges that if the testimony of these individuals had been included in the warrant affidavit, the affidavit would not have supported a finding of probable cause. Brown sought compensatory and punitive damages for false arrest and malicious prosecution.

D'Amico moved for summary judgment on the grounds that there was probable cause for Brown's arrest and prosecution and that, in any event, he is immune from liability because of qualified immunity. The Court granted his motion in part, dismissing the claims against him based on actions taken in his official capacity. But the Court denied his motion as regards the claims against him based on actions taken in his individual capacity. D'Amico now appeals from that ruling.

### Discussion

Since the immunity issue can be adjudicated without any resolution of a factual dispute, we have jurisdiction on this interlocutory appeal to decide D'Amico's claim to qualified immunity.

■ Qualified immunity shields arresting officers from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights, *see Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). *See Golino v. New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). As Brown argues, "[t]he right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Id.* But this assertion identifies the right at issue in the instant case at too abstract a level of generality. *See Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038–39. A more particularized formulation of the right at issue is the right to be free from an arrest based on a warrant that would not have been issued if the officer seeking the warrant had disclosed to the issuing magistrate information within the officer's knowledge that negated probable cause. *See Cartier v. Lussier,* 955 F.2d 841, 845–46 (2d Cir.1992); *Golino v. New Haven,* 950 F.2d 864 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992); *Magnotti v. Kuntz,* 918 F.2d 364, 368 (2d Cir.1990). Though an officer need not volunteer every fact that arguably cuts against the existence of probable cause, the officer may not omit circumstances that are critical to the evaluation of probable cause. A clear example would occur if an officer secured a warrant by informing a judge that he heard the defendant utter a threat, but failed to mention that the officer knew that the defendant was reading lines while auditioning for a part in a play. In this case, Brown alleges that D'Amico omitted critical information from his warrant application that left the application as misleading as the application found deficient in *Golino.* We need not determine the validity of this contention because of the special state procedural context in which this case arises.

■ Before D'Amico sought the arrest warrant, an "investigatory grand jury" had already found probable cause based on the same evidence that the state officer had allegedly omitted from the warrant application. Under Connecticut law, the finding of proba-

ble cause by an investigatory grand jury does not seem to establish conclusively that probable cause exists for the arrest: "Investigating grand juries neither *try* nor *condemn* nor *accuse;* they only *inquire* and *report.*" *In re Investigation of the Grand Juror into the Bethel Police Department,* 188 Conn. 601, 605, 452 A.2d 935, 936 (1982) (emphasis in original). Nevertheless, the prior finding of probable cause by a neutral magistrate significantly affects the nature of the right at issue in this litigation. In essence, Brown is asserting the right to be free from an arrest under circumstances where (a) probable cause is furnished; (b) probable cause would arguably have been negated if information in the applicant's possession had been disclosed to the issuing magistrate, and (c) the undisclosed information had previously been disclosed to an investigatory grand jury that had made a finding of probable cause. We hold that D'Amico is entitled to qualified immunity because this right was not clearly established in December 1986 when he applied for an arrest warrant (nor indeed is it clearly established even now).

Plaintiff might object that we have defined the right asserted at an undue level of particularity. We do not believe that we have. We do not grant immunity because no previous case has presented the exact set of facts now before us. *See Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 (observing that defendant is not entitled to qualified immunity just because "very action in question" has not previously been held unlawful). Rather, we uphold the claim of immunity because no case has considered the responsibilities of a state law enforcement officer in the special state procedural context presented here. A police officer violates no settled interpretation of the Fourth Amendment when the officer omits from a warrant application information that has previously been included in the aggregate of evidence that led a neutral investigatory grand jury to make a finding of probable cause.

We observe that a more abstract level of generality might be appropriate in other cases involving charges of false arrest and malicious prosecution. For example, if there had been no probable cause finding by an investigatory grand jury that had considered the information D'Amico had allegedly omitted, we would then have to consider whether the omission cited by Brown was so significant as to render this case akin to *Golino.* There the right at issue was the right to be free from arrest or prosecution without probable cause. *See Golino,* 950 F.2d at 870.[1]

Brown attempts to analogize this case to *Golino* on the theory that D'Amico omitted some information that had never been considered by the investigatory grand jury. This claim is entirely unsubstantiated. Brown's only evidence that D'Amico had exonerating information not available to the grand jury consists of Detective Howard Jones's averment that "[D'Amico and another state officer] attempt[ed] to get me to say more at the grand jury investigation than what I knew." Even taking this claim as true, we do not believe that it demonstrates that D'Amico was aware of any exculpatory information not provided to the investigatory grand jury.

The order of the District Court is reversed.

---

1. The qualified immunity determination in *Golino* turned not on whether that right was clearly established—we held that it was—but on whether it was objectively reasonable for the officer to believe that he had not violated the right. *Id.* at 870–71; *see also O'Neill v. Babylon,* 986 F.2d 646, 650 (2d Cir.1993); *Cartier v. Lussier,* 955 F.2d 841, 847 (2d Cir.1992); *Magnotti v. Kuntz,* 918 F.2d 364, 367–68 (2d Cir.1990).