John SMITH,[1] Plaintiff–Appellee,

v.

Albert EDWARDS and Town of Fairfield, Defendants–Appellants.

Docket No. 97–9226.

United States Court of Appeals, Second Circuit.

Argued Jan. 15, 1999.

Decided March 24, 1999.

---

**1.** For the sake of the privacy of plaintiff's child, pseudonyms for plaintiff and his family are employed throughout this opinion.

Charles W. Fleischmann, Sherwood, Garlick, Cowell, Diviney & Atwood, Westport, Connecticut, for Defendants–Appellants.

Frank W. Murphy, Tierney, Zullo, Flaherty & Murphy, P.C., Norwalk, Connecticut, for Plaintiff–Appellee.

Before: JACOBS, LEVAL and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge:

On June 25, 1993, Officer Albert Edwards ("Edwards") of the Fairfield, Connecticut Police Department filed a probable cause affidavit with the Connecticut Superior Court seeking an arrest warrant based on his investigation of allegations that John Smith ("Smith") had sexually abused his daughter. A magistrate judge signed the warrant, and Edwards arrested Smith. The charges were subsequently dismissed and Smith filed suit alleging, among other things, that Edwards had withheld exculpatory information from the magistrate judge in order to secure the arrest warrant. Edwards and the Town of Fairfield (collectively "defendants") moved for summary judgement, with Edwards arguing that qualified immunity applied to shield him from liability.[2] Defendants now appeal the decision of the United States District Court for the District of Connecticut (Squatrito, *Judge*) denying their motion. We reverse the district court's order and remand for entry of judgment dismissing the complaint.

## BACKGROUND

On February 16, 1993, Mary Smith reported to Edwards that her husband, Smith, had been sexually abusing their three-year old daughter, Jane, repeatedly over the course of the previous year. The next day, Edwards took a sworn, written statement from Mary Smith in which she explained that a recent conversation with her daughter had prompted her to complain to the police. Mary Smith claimed that Jane had told her that while Mary Smith had been attending social work classes, Smith had inappropriately touched her in the guestroom of their home. The child conveyed explicit details of the conduct, details which are not generally known to children of Jane's age. Mary Smith further detailed that for over one year, Jane had been suffering from medical ailments consistent with sexual abuse.

In addition to filing the police report, Mary Smith instituted divorce proceedings against Smith and applied *ex parte* to a Connecticut Superior Court for restraining orders to bar Smith from contacting her or her daughter. After temporary protective orders were issued, the Connecticut Superior Court, Judge Edgar Bassick, III presiding, held hearings on Mary Smith's application for permanent orders of protection. Mary Smith, Smith, Edwards and various personnel from the Yale–New Haven Child Abuse Clinic testified at the hearings, which took place on various dates between April 12 and June 11, 1993.

Approximately one month before the first hearing, Edwards received a copy of notes written by Dr. Sophia Leonida, a pediatrician who had examined Jane. Dr.

---

**2.** The Town of Fairfield argued principally in support of summary judgment that there was no genuine issue of material fact with regard to plaintiff's *Monell* claim against the municipality. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipality may be held liable under § 1983 only if there is proof that a custom or official policy of the municipality has deprived a citizen of any rights, privileges or immunities secured by the Constitution). On appeal, the Town of Fairfield maintains that because Edwards is entitled to qualified immunity, plaintiff's claims against the town must be dismissed as well.

Leonida noted several reactions by Jane and physical manifestations that might be indicative, although not conclusive, of sexual abuse. Dr. Leonida's final assessment was "suspected sexual abuse (by history)," and she recommended that the child be scheduled for an examination at Yale–New Haven Hospital. Over the next several weeks, while the protective order hearings were ongoing, Edwards also received copies of two reports prepared by the Yale–New Haven Hospital concerning Jane. In the first report, a "Medical Report for Sexual Assault" prepared by Janet Murphy, R.N., P.N.P., Murphy found some "abnormal ... findings that are suspicious and consistent with a history of sexual abuse...." Murphy, however, also reported that some of the results of the medical "exam reveal[ed] normal findings that neither confirm nor refute" the child's claims of abuse.

The second report, a "Social Work Evaluation Interim Report," was prepared by Cynthia Warshaw, M.S.W., on May 6, 1993 (the "Interim Report"). The report indicated that Warshaw had observed Jane on five different occasions and had interviewed Mary Smith alone. During her fourth session with Warshaw, Jane told the social worker that her father scared her and then proceeded to describe in graphic detail the various acts of abuse. When Warshaw asked Jane if her mother had told her what to say, Jane first answered affirmatively but then told Warshaw that her mother had told her to tell the truth. Warshaw ended her report by stating that she would provide final conclusions and recommendations after completing the evaluation, but that "until then this clinic is seriously concerned about the medical findings and the statements made by [the child]." Murphy had not interviewed Smith as of the time she issued the report, but she indicated that it was the "intention of the clinic to meet with Mr. [Smith] so that he can express his concerns and we can respond to his questions before completing the evaluation."

After receiving the Interim Report, and while the protective orders were still in effect, Edwards called Smith's attorney, Reuben Midler, and attempted to arrange an interview with Smith. During the May 20, 1993 conversation, Edwards told Midler that he intended to apply for an arrest warrant for Smith based on the findings in the Interim Report. In response, and in a letter memorializing their conversation, Midler informed Edwards that Warshaw, Murphy and Mary Smith had been cross-examined concerning the Yale reports during the Superior Court hearings. Midler further explained that at the hearing, Warshaw characterized her Interim Report as "nothing but suspicions which do not even rise to the level of 'allegations' [and that] the report is incomplete and can be subject to change." Midler believed it "incomprehensible" that Edwards would procure an arrest warrant "without [first] obtaining transcripts of the court proceedings to date [since they] deal[ ] with the very allegations and witnesses underlying the arrest warrant application." Midler also suggested that Edwards speak with the child's attorney, John Howell, who could confirm Midler's characterizations of the testimony given at the hearings. Midler concluded during the conversation with Edwards that the police had already "made up [their] minds," and therefore refused to subject Smith to a police interview. Midler warned Edwards that his failure to advise the judge reviewing the warrant application of the Smiths' pending divorce action and of the exculpatory evidence adduced at those hearings would be "tantamount to a failure to provide the judicial authority with pertinent exculpatory information that seriously calls into question the truthfulness of the allegations made against [Smith]."

On June 11, 1993, at the close of the hearings, Judge Bassick ruled that Mary Smith was not entitled to a protective order and that Smith could return home. The judge provided no written order explaining the reasons for his decision. He

simply found that Mary Smith had failed to sustain her burden of proof in that "there has been insufficient evidence to justify the continuance of that restraining order." The judge also stated that he did "not see, at least at this point in time, the materiality or relevancy of the finished Yale Sexual Abuse Clinic report, except upon the issue of custody." Finally, the judge granted Smith's lawyer's request to seal the record of the proceedings.

After Judge Bassick rendered his decision, Mary Smith and her attorney contacted Edwards to request that Smith be arrested. On June 25, 1993, Edwards completed an affidavit in support of an arrest warrant for Smith. In the affidavit, Edwards outlined the sexual abuse allegations contained in the various reports described above. In addition, Edwards discussed at length his failed attempts to interview Smith and explained that Midler refused Edwards an interview because "the court case involving visitation rights was still on [going]...." Except for the implication conveyed by the reference to 'visitation rights,' Edwards did not mention the divorce action between the Smiths and the probable cause affidavit said nothing about the ultimate outcome of the Superior Court hearings.

Before it was submitted to the Superior Court magistrate judge, the probable cause affidavit was reviewed and approved by Edwards's superior officers. Based on the affidavit, the magistrate judge issued a warrant and Smith was arrested at his home on June 25, 1993. Smith was charged with two counts of sexual assault in the first degree[3] and two counts of risk of injury to a minor.[4] A few hours later,

Smith was released after posting bail. On or about February 17, 1995, the day before Smith's criminal trial was to commence, the prosecution served notice that it sought to withdraw the charges *nolle prosequi* because Jane had "shut down" and was no longer able to testify regarding the incidents of abuse. On March 30, 1995, the Superior Court dismissed the charges against Smith.

Smith thereafter brought suit in Connecticut state court against Edwards and Fairfield under 42 U.S.C. § 1983 and the United States and Connecticut Constitutions alleging, among other things, that he had been falsely arrested. Defendants removed the action to the United States District Court in the District of Connecticut. On May 23, 1997, defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, with Edwards asserting a defense of qualified immunity. In opposition, plaintiff argued that Edwards's probable cause affidavit contained material omissions and misstatements, which, if included in the affidavit, would have rendered it insufficient to support a finding of probable cause. Plaintiff faulted Edwards for failing to disclose in his affidavit that (1) Jane's accounts of abuse were inconsistent; (2) Mary Smith had suspected that Jane's paternal grandfather of abusing her a year earlier; (3) the pediatrician's report suggested that the child's physical abnormalities could have resulted from normal maturation; (4) the Interim Report stated that it was subject to change; (5) the mother made her allegations in the context of ongoing divorce proceedings; and (6) the Superior Court had vacated the temporary

3. Conn. Gen.Stat. § 53a–70 (1993) provided in pertinent part:

(a) A person is guilty of sexual assault in the first degree when such person ... (2) engages in sexual intercourse with another person and such other person is under thirteen years of age....

4. Conn. Gen.Stat. § 53–21 (1993) provided in pertinent part:

Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both.

restraining orders and denied Mary Smith's application for permanent protective orders.

In ruling on defendants's motion, the district court rejected all of plaintiff's contentions, but one. The court concluded, however, that although "the omission of general information regarding the divorce proceedings alone may not have constituted a material omission, the intentional omission of the fact that another court recently denied an application for a protective order for the minor child in this case, based on the same evidence contained in the present warrant application, may constitute a material omission." The court therefore denied summary judgment on the basis that a "genuine issue of material fact [existed] as to whether or not Detective Edwards knowingly omitted from his warrant application the decision of the Superior Court [and] ... whether [this] was a material omission in the warrant application." The court further stated that if Edwards "knowingly omitted information that would have negated probable cause," Edwards would not be entitled to qualified immunity because the court was "unable to conclude that it was objectively reasonable for Detective Edwards to have believed that probable cause existed at the time he arrested the plaintiff, or that officers of reasonable competence under the circumstances could disagree as to whether the probable cause test was met." The court also denied, without opinion, defendants' subsequent motion for reconsideration. This appeal followed.

## DISCUSSION

Defendants claim the district court erred in holding (1) that a disputed issue of material fact existed as to whether Edwards knew of the Connecticut Superior Court's disposition when he filed his probable cause affidavit, and (2) that any such knowledge, assuming *arguendo* it existed, should have been included in Edwards's affidavit and would have negated a finding of probable cause. For the reasons explained below, we lack jurisdiction to consider the first claim, but we agree with defendants as to the second and therefore reverse the judgment below.

## I. Appellate Jurisdiction

An appellate court may entertain an interlocutory appeal addressing a district court's denial of a qualified immunity claim "to the extent that it turns on an issue of law" because such denials are " 'final decision[s]' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). "[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable [however] ... if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred...." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir.1996) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)).

Before the district court, Edwards denied having knowledge of the outcome of the Connecticut Superior Court proceedings. On appeal, Edwards maintains that in opposing the defendants' motion for summary judgment, Smith offered nothing more than conclusory allegations in the complaint and in his Local Rule 56.1 statement that Edwards had knowledge of the outcome of the Superior Court hearings. Although it is not clear to us that the record reveals an evidentiary basis for the district court's conclusion that there was a genuine dispute as to Edwards' knowledge, the sufficiency of this evidence is not an appealable issue. *See id.*

This conclusion does not, however, preclude us from addressing Edwards' second argument because, "as long as the defendant can support an immunity defense on stipulated facts, facts accepted for purposes of the appeal, or the plaintiff's version of the facts that the district judge

deemed available for jury resolution, an interlocutory appeal is available to assert that an immunity defense is established as a matter of law." *Id.* at 90; *see also Tierney v. Davidson,* 133 F.3d 189, 194 (2d Cir.1998) ("Even where the lower court rules that material disputes of fact preclude summary judgment on qualified immunity, we may still exercise interlocutory jurisdiction if the defendant ... contends that he is entitled to qualified immunity even under plaintiff's version of the facts."). Edwards alleges on appeal that even assuming he was aware of the outcome of the Superior Court proceedings, his omission of such information would not have negated probable cause. We therefore have jurisdiction to determine whether the omission of such information from Edwards' affidavit was material to the probable cause determination. *See Finnegan v. Fountain,* 915 F.2d 817, 821 (2d Cir.1990) ("Once disputed factual issues are resolved, the application of qualified immunity is ... ultimately a question of law for the court to decide.").

## II. Alleged Constitutional Violation

 In support of his claims, Smith invokes his "long established constitutional right" to be "free from arrest ... in the absence of probable cause." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997). For present purposes, this right can be particularized as "the right to be free from an arrest based on a warrant that would not have been issued if the officer seeking the warrant had disclosed to the issuing magistrate information within the officer's knowledge that negated probable cause." *Brown v. D'Amico,* 35 F.3d 97, 99 (2d Cir.1994). "A plaintiff can demonstrate that this right was violated where the officer ... 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement ...' or omitted material information," and where "such false or omitted information was 'necessary to the finding of probable cause.'" *Soares v. Connecticut,* 8 F.3d 917, 920 (2d Cir.1993) (citations omitted); *see also Martinez v. City of Schenectady,* 115 F.3d 111, 115 (2d Cir.1997) (quoting *Soares* ).

 Here, Smith claims that Edwards was guilty not of a "false statement," but of a "material omission," *i.e.,* he never alerted the magistrate judge as to the outcome of the Superior Court proceedings. The first step in assessing the materiality of such an omission is to "correct" the allegedly defective affidavit by inserting the information withheld from the magistrate judge. *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *see also Soares,* 8 F.3d at 920. The second step is for the court to then determine "whether as a matter of law [the corrected affidavit] did or did not support probable cause." *Cartier,* 955 F.2d at 845. "If probable cause remains, no constitutional violation of the plaintiff's Fourth Amendment rights has occurred." *Soares,* 8 F.3d at 920; *see also Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) ("The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'") (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)). In such a case, any disputed factual issues cannot be deemed "material," and summary judgment is warranted.[5]

5. In the immunity context, we have described materiality as a "mixed question of law and fact." *Velardi v. Walsh,* 40 F.3d 569, 574 (2d Cir.1994) (affirming district court's grant of summary judgment dismissing constitutional claims against defendant police officers on the basis of qualified immunity); *see also Golino v. City of New Haven,* 950 F.2d 864, 871 (2d Cir.1991) (affirming district court's denial of qualified immunity on summary judgment). We have more specifically explained that whether particular information is "relevant" to an assessment of probable cause is a legal determination, whereas it is "for the finder of fact" to decide what weight a neutral magistrate would have assigned such relevant infor-

**106**

Probable cause to arrest exists under federal law "when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino*, 950 F.2d at 870 (citing *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). Similarly, under Connecticut state law, probable cause "comprises such facts 'as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe' that criminal activity has occurred." *State v. Barton*, 219 Conn. 529, 594 A.2d 917, 928 (Conn.1991) (quoting *Stone v. Stevens*, 12 Conn. 219, 230 (1837)); *see also State v. Heinz*, 193 Conn. 612, 480 A.2d 452, 456 (Conn.1984) (defining probable cause as a standard "less demanding than that which attends an inquiry into whether there has been a prima facie showing of criminal activity. Instead, all that is required is that the affidavit, read in a common-sense manner, give objective evidence of a fair probability that proscribed activity has occurred.") (citations omitted). We conclude that under federal law (as under Connecticut law for that matter), defendants' alleged failure to alert the magistrate judge to the outcome of the Superior Court proceedings was not material because there would have been probable cause to arrest Smith even if Edwards had included the omitted information.

In the affidavit that he actually presented to the magistrate judge, Edwards described the graphic statements that Jane made to her mother and to various social workers and nurses. Although Smith suggests that Mary's pending divorce rendered her own account of Jane's state-

ments suspect, Mary provided that account under oath and her statement was largely corroborated by Warshaw's independent interviews with Jane. In addition, Edwards's affidavit described the contents of two separately compiled reports, one by Warshaw and one by Murphy, which indicated that Jane had "physical abnormalities" and exhibited behavior consistent with sexual abuse. Although one of the two cited reports was expressly labeled "interim," the two taken together certainly contained "reasonably trustworthy information" corroborating Jane and her mother's accounts. All of these considerations, taken together, would have left a magistrate judge with ample support for the conclusion that there was "a fair probability" of criminal conduct by Smith.

Moreover, had Edwards' affidavit been "corrected" in the manner plaintiff now proposes, we see nothing in the outcome of the Superior Court proceedings that would have negated probable cause. As an initial matter, Judge Bassick did not explain his reasons for ruling that Sally had failed to sustain her burden of proof that permanent protective orders were warranted. It would not have been clear to Edwards or a magistrate judge—and it is not now clear to us—that those reasons implicated considerations that would be relevant to a probable cause determination in a criminal setting. It is significant that the standard of proof necessary to secure a protective order in a civil hearing in Connecticut is higher than the standard necessary to obtain an arrest warrant. *See State v. Munoz*, 233 Conn. 106, 659 A.2d 683, 697 (Conn.1995) ("[P]roof of probable cause requires less than proof by a preponderance of the evidence."); *cf. Heinz*, 480 A.2d at

mation. *Velardi*, 40 F.3d at 574. Although this formulation promotes jury trials in "doubtful cases," summary judgment remains appropriate where there can be no "genuine dispute" that a magistrate judge would have issued the warrant on a "corrected affidavit[ ]." *Id.* Moreover, as explained in the text, there can be no such dispute where a court is able to determine, as a matter of law, that the

corrected affidavit would have been sufficient to support a finding of probable cause. *See Soares*, 8 F.3d at 920; *Weyant*, 101 F.3d at 852 ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . ."). This was exactly the situation in *Velardi*, and it is the situation we face here.

 

456 (holding that less is required to establish probable cause to arrest than to make a prima facie showing of criminal activity). Smith's success in state court therefore had little bearing upon whether there was probable cause to support his arrest. Lastly, in order to secure a protective order, Sally needed to demonstrate a "continuous threat of present physical pain or physical injury," Conn.Gen.Stat. § 46b–15 (1993), and there was no comparable element in any of the criminal offenses with which Smith was charged. In light of these considerations, there is simply no basis to conclude that it would have been "critical to the evaluation of probable cause" for Edwards to have alerted the magistrate judge to the state court ruling. *Brown*, 35 F.3d at 99. Edwards was therefore entitled to summary judgment and the action against him should have been dismissed.

## III. Municipal Liability

Under 42 U.S.C. § 1983, a municipality may be held liable for a constitutional violation if the plaintiff can prove that the violations resulted from a municipality's customs or policies. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Because we have held that Smith suffered no constitutional violation, summary judgment must be granted to the Town of Fairfield as well. *See Ricciuti*, 124 F.3d at 132 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)).

## CONCLUSION

We vacate the district court's order denying summary judgment and remand for entry of judgment in favor of defendants and for dismissal of Smith's federal claims. We also direct that the lower court dismiss plaintiff's supplemental state law claims for lack of subject matter jurisdiction. *See Tierney*, 133 F.3d at 199 ("Since the federal claims must be dismissed, we also direct

dismissal of the state claims for lack of jurisdiction.").