21-2847
James Doe v. Gladys Pisani, Daniel McAnaspie, et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of June, two thousand twenty-three.

PRESENT:
> MYRNA PÉREZ,
> ALISON J. NATHAN,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

---

James Doe,

*Plaintiff-Appellee*,

Mother Doe, John Doe, Jane Doe, Youngest Child Doe,

*Plaintiffs*,

v.                                          No. 21-2847

Gladys Pisani, Daniel McAnaspie, Joseph Joudy,

*Defendants-Appellants.*

---

| | |
|---|---|
| **FOR PLAINTIFF-APPELLEE:** | John R. Williams, Law Office of John R. Williams, New Haven, CT. |
| **FOR DEFENDANTS-APPELLANTS:** | KATHERINE E. RULE (Thomas R. Gerarde, *on the brief*), Howd & Ludorf, LLC, Hartford, CT. |

1

Appeal from the portion of a ruling of the United States District Court for the District of Connecticut (Alfred V. Covello, *J.*) denying qualified immunity to Defendants.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this portion of the ruling of the district court is **REVERSED** and **REMANDED** with instructions to dismiss the claims against Defendants.

The present action arises from the investigation and prosecution for sexual abuse of James Doe ("James") initiated by allegations made by his children, John Doe ("John") and Jane Doe ("Jane"). The charges against James were dismissed after the family moved to England and would not permit the children to return to the United States to testify. Thereafter, James, his wife Mother Doe, and his children John, Jane, and Youngest Child Doe (collectively, "the Does"), sued Defendants, all members of the Newtown Police Department, in the United States District Court for the District of Connecticut (Alfred V. Covello, *J.*) pursuant to 42 U.S.C. § 1983 and Connecticut law.

Although the district court awarded summary judgment to Defendants with respect to the Does' intentional infliction of emotional distress claim, Defendants now pursue an interlocutory appeal from the portion of the district court's order that denied them qualified immunity with respect to James's malicious prosecution claims. On appeal, Defendants contend that they had arguable probable cause to submit search and arrest warrants for James Doe. We agree. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to reverse the portion of the district court's ruling that concluded otherwise.

## I.  Background

### A.  Underlying Events

On the night of January 18, 2013, Mother Doe was putting John and Jane to bed.  Jane told Mother Doe that she did not like it when James got into bed with her.  John then disclosed that James taught him to masturbate and would masturbate in front of John.  John said that James would "grab[]" and "squeeze[]" John's penis and it "hurt[]."  Joint App'x at 255.

Mother Doe called the Connecticut Department of Children and Families ("DCF") and reported her children's disclosures.  At approximately two o'clock in the morning of January 19, 2013, officers from the Newtown Police Department (though not Defendants) arrived at the Does' home.  James was escorted off the property.  An officer took Mother Doe's sworn statement.  Mother Doe swore to her children's disclosures.  The officer then read at least some of Mother Doe's statement back to her.  Mother Doe corrected the spelling of her daughter's name, but otherwise made no revisions before signing the document.

Within twenty-four hours, John told Mother Doe that his disclosures about his father had not been truthful.  Mother Doe reported John's recantation to an unidentified female officer of the Newtown Police Department.  She also asked to amend her statement, but the officer refused.  On February 6, 2013, Mother Doe emailed Officer Pisani, the officer in charge, relaying John's recantation.  Mother Doe also noted her concern that she had misinterpreted and sexualized what Jane had told her.

On January 23, 2013, John and Jane were interviewed by a member of Family and Children's Aid.  Officer Pisani observed the interviews through one-way glass.  The interviewer asked both children what words they used to describe various body parts.  John used the word "butt" to refer to "penis" and did so throughout the interview.  In his interview, which was

3

recorded, John stated that James came into his bedroom and encouraged John to look at his "butt" as James "touch[ed] it," and that it happened "more" than one time. *Id.* at 1586. John also reported that James showed him how to touch James's "butt" and that James would take photographs of John naked. John repeated several times that he could not remember specific incidents or when they had occurred. At the end of the interview, John also stated that "[James] didn't touch" him "[e]xcept for the spanking." *Id.* at 1591. During Jane's interview, which was also recorded, she reported that James came into her bed and "put his hands in his butt" and "hugged" her. *Id.* at 1603. Jane also confirmed that she had seen James's penis. But she denied that anyone had touched her "boobs, [] vagina, or [] bottom." *Id.* at 1608.

As part of the investigation, Officer Pisani and the Newtown Police Department spoke to John's classmates and their parents. On February 15, 2013, the parent of a child in John's class reported to the Newtown Police Department that John had told his child that James had done something to John's butt. On March 12, 2013, another child provided a sworn statement to Officer Pisani, in which she swore that John had told her that James was arrested and that James had touched John's private parts. This child's father confirmed that the child had told him the same. John testified in the instant case that he had not told the children that James had abused him.

**B. The Warrants**

Throughout the course of the investigation, Defendants obtained various search warrants and an arrest warrant for James. James challenges three of the search warrants and the arrest warrant. We therefore describe them here. The three search warrants are dated January 29, 2013, February 26, 2013, and January 8, 2015. The search warrants pertained to James's person, some of the family's electronic devices, and the Does' home, respectively. Detectives McAnaspie and Joudy served as the co-affiants on the search warrant affidavits. All three search warrant affidavits

4

summarized Mother Doe's sworn statement and the contents of the children's forensic interviews. The January 8, 2015 search warrant affidavit additionally described Mother Doe's email to Officer Pisani relaying John's recantation and Mother Doe's concerns about putting words in Jane's mouth. The January 8, 2015 search warrant affidavit also described images and videos recovered from the Does' electronics. All three search warrants were approved by a judge.

The arrest warrant was prepared by Officer Pisani on April 8, 2013. Similar to the search warrant affidavits, the arrest warrant affidavit references Mother Doe's sworn statement and John and Jane's forensic interviews. It also summarizes the corroborating information Officer Pisani obtained from John's peers and their parents. The arrest warrant affidavit notes Mother Doe's email to Officer Pisani, a statement from James maintaining his innocence, and the opinions of various medical professionals retained by the Does that James did not abuse his children. The arrest warrant was approved by a judge.

### C. Procedural History

On June 15, 2016, the superior court granted James's motion to dismiss the charges against him. Thereafter, the Does brought the present action. Defendants moved for summary judgment, asserting, inter alia, that they were entitled to qualified immunity. The district court concluded that Defendants were "not entitled to the summary disposition of [James's] claims on the basis of qualified immunity" because there were issues of fact sufficient to preclude a qualified immunity determination. Special App'x at 39. Specifically, the district court identified two disputed issues of fact: (1) whether Officer Pisani mischaracterized John's statements to his classmates; and (2) whether Defendants continued to have probable cause to pursue their investigation once they learned that John and Jane claimed they were coerced into making false claims against James in their forensic interviews. Defendants timely appealed.

5

## II. Jurisdiction

"The denial of summary judgment is ordinarily an interlocutory decision, not a 'final decision' appealable under 28 U.S.C. § 1291[.]" *Marshall v. Sullivan*, 105 F.3d 47, 53 (2d Cir. 1996). An exception exists, however, where a defendant moves for and is denied summary judgment on the basis of qualified immunity. *See Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). "Such 'jurisdiction is nevertheless limited to circumstances where the qualified immunity defense may be established as a matter of law.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir. 1992)). A "district court's mere assertion that disputed factual issues exist[]," however, is not "enough to preclude an immediate appeal." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996). "Rather, we have jurisdiction to review a denial of qualified immunity to the extent it can be resolved 'on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find.'" *Escalera*, 361 F.3d at 743 (quoting *Salim*, 93 F.3d at 89). "But we may not review the district court's ruling that 'the plaintiff's evidence was sufficient to create a jury issue on the facts relevant to the defendant's immunity defense.'" *Bolmer v. Oliveira*, 594 F.3d 134, 141 (2d Cir. 2010) (quoting *Salim*, 93 F.3d at 91). "Cabined by these constraints, our review is *de novo*." *Id.* Because this case may be resolved on the facts favorable to the plaintiff that the district court concluded the jury might find, we have jurisdiction to decide whether Defendants are entitled to qualified immunity.

## III. Qualified Immunity Standard

"[A] police officer is entitled to qualified immunity where '(1) her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was "objectively reasonable" for her to believe that her actions were lawful at the

6

time of the challenged act.'" *Betts v. Shearman*, 751 F.3d 78, 82–83 (2d Cir. 2014) (alterations adopted) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir.2007)).

"The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right," *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991), as has the right not to be searched without probable cause, *see McColley v. Cnty. Of Rensselaer*, 740 F.3d 817, 823 (2d Cir. 2014). Therefore, we focus on whether the officers' probable cause determinations were objectively reasonable. *See Jenkins*, 478 F.3d at 87. "An officer's determination is objectively reasonable if there was 'arguable' probable cause . . . that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Lennon v. Miller*, 66 F.3d 416, 423–24 (2d Cir. 1995)). "Put another way, an . . . officer will find protection under the defense of qualified immunity unless 'no reasonably competent officer' could have concluded, based on the facts known at the time . . . that probable cause existed." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016).

Under Connecticut and federal law, probable cause to arrest and to commence and continue a criminal proceeding exists when police "officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Washington v. Napolitano*, 29 F.4th 93, 104–05 (2d Cir. 2022) (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)). Similarly, "probable cause to search is demonstrated," under Connecticut and federal law, "where the totality of the circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Walczyk*, 496 F.3d at 156 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

## IV. Discussion

We conclude that arguable probable cause existed at the time the defendants submitted the warrants that form the basis of James's malicious prosecution claims. "Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause." *Walczyk*, 496 F.3d at 155–56. James argues that qualified immunity is defeated here because material omissions and misstatements infected the issuing magistrate's probable cause determination. In particular, James contends that the applications failed to mention John's claim that the interviewer bribed him—with the promise of playing "in the room with popcorn"—to lie about James during his forensic interview, and inaccurately stated that John told children in his class that his father sexually abused him. Joint App'x at 21–22. James also alleges that the warrants paraphrased and sometimes misquoted John and Jane's forensic interviews.

In reviewing a case in which a plaintiff alleges material omissions and misstatements, "a court should put aside allegedly false material, supply any omitted information, and then determine whether the contents of the 'corrected affidavit' would have supported a finding of probable cause." *Soares v. State of Conn.*, 8 F.3d 917, 920 (2d Cir. 1993). "In performing this correcting process, we examine all of the information the officers possessed when they applied for the . . . warrant." *Escalera*, 361 F.3d at 744; *see also Ganek v. Leibowitz*, 874 F.3d 73, 82 (2d Cir. 2017).

Performing that process here, we conclude that the "corrected" warrant affidavits remain sufficient to support a finding of probable cause.[1] All four "corrected" affidavits would have advised that (1) Mother Doe had reported to DCF that her husband was sexually abusing their

---

[1] We do not consider some of the omissions about which James complains because Defendants were not aware of the information underlying the alleged omissions when they prepared the warrant affidavits. *See Escalera*, 361 F.3d at 744. Specifically, we do not consider that John later accused the family's au pair and her partner of sexual assault. As the Does concede, Mother Doe did not alert Defendants to John's disclosure until after the last search was effected.

8

children; (2) Mother Doe submitted a sworn statement recounting her children's description of the abuse in graphic detail; (3) the interviewer made promises to John that made him feel pressured to say bad things about James;[2] (4) afterwards John reported in detail that James sexually abused him, for example, that James had taught John to masturbate, had shown John pornography, and had taken photographs of John naked; (5) Jane reported, for example, that James came into her room at night, put his hands in his pants, and she did not like it; and (6) John and Jane each denied, at the ends of their interviews, that James had touched their private parts.  In this analysis we do not consider the statements from John's classmates and their parents because the district court concluded that whether Officer Pisani mischaracterized these statements was a material fact in dispute.

In summary, all four affidavits would have included John and Jane's firsthand accounts of their alleged abuse, which were largely consistent with a sworn statement from their mother.  That is sufficient to establish arguable probable cause.  *See Smith v. Edwards*, 175 F.3d 99, 106 (2d Cir. 1999) (finding probable cause for plaintiff's arrest after "correcting" the arrest warrant affidavit where a child reported sexual abuse to her mother and various others and her mother provided a sworn statement confirming the same); *Escalera*, 361 F.3d at 745–46 (finding arguable probable cause for plaintiff's arrest after "correcting" the arrest warrant, notwithstanding complainant's inconsistencies and mental health issues).  John's various recantations, James's protestations of innocence, and the opinions of various mental health professionals that James did not molest the children establish only "conflicting accounts," which do not negate arguable probable cause "where an . . . officer chose to believe" one credible account over others.  *Curley v. Vill. of Suffern*,

---

[2] We assume without deciding that, drawing every inference in James's favor, Officer Pisani might have heard the statements that John had interpreted as bribes.

268 F.3d 65, 70 (2d Cir. 2001). Defendants were entitled to credit, among other things, Mother Doe's sworn statement and the children's consistent disclosures during the forensic interviews over subsequent conflicting accounts. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."). We cannot say that "'[*no*] reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that' probable cause existed." *Triolo v. Nassau Cnty.*, 24 F.4th 98, 108 (2d Cir. 2022) (quoting *Figueroa*, 825 F.3d at 100). Thus, we find that Defendants are entitled to qualified immunity.

*        *        *

We have considered all of James's remaining arguments and find them to be without merit. For the foregoing reasons, we **REVERSE** the portion of the district court's ruling that denied qualified immunity to Defendants and **REMAND** with instructions to dismiss the claims against Defendants.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10